IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBINETT'S FLOOR COVERING, LLC, )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>WALMART INC., )<br>)<br>**Defendant.** ) | Case No. 24-CV-233-JFJ |

**OPINION AND ORDER**

Before the Court are the Motion to Compel Arbitration filed by Defendant Walmart, Inc. ("Walmart") against Plaintiff Robinett's Floor Covering, LLC ("Robinett") (ECF No. 11) and the Motion for Leave to Intervene filed by American Bank of Oklahoma ("American") (ECF No. 17). For reasons set forth below, the motion to compel arbitration (ECF No. 11) is GRANTED. The motion for leave to intervene (ECF No. 17) is DENIED without prejudice to refiling upon completion of the arbitration proceedings.[1]

**I.    Walmart's Motion to Compel Arbitration**

    **A.    Factual Background**

The following facts are not disputed. Robinett is a flooring contractor located in Jay, Oklahoma. For the last sixteen years, Robinett has contracted with Walmart to complete renovation projects at Walmart retail locations nationwide. Since December 2022, the general terms of the parties' relationship has been governed by a Master Construction Contract ("Master Contract"). The Master Contract includes the following arbitration provision:

> Any claim . . . that satisfies either of the following conditions shall be decided by resort to binding arbitration in the State in which the Project is located: (a) the claim involves an amount in dispute in excess of Two Million and No/100 Dollars

---

[1] The parties have consented to a magistrate judge presiding over the case. ECF No. 13.

($2,000,000.00) and/or (b) the claim involves three (3) or more parties, each of whom have agreed to resolve disputes by resort to binding arbitration.

ECF No. 11-2 at § 8.3.2 ("arbitration provision"). The Master Contract further provides that any arbitration "shall be conducted on a confidential basis in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association [("AAA")] then in effect" by three arbitrators chosen pursuant to AAA rules. *Id.* at § 8.3.2.1.

On April 17, 2024, Robinett filed a petition against Walmart in Delaware County District Court, alleging five causes of action: (1) breach of contract; (2) unjust enrichment; (3) breach of the implied covenant of good faith and fair dealing; (4) interference with contract; and (5) interference with business relationship and/or expectancy. Robinett alleges Walmart breached the Contract by improperly withdrawing projects awarded to Robinett, refusing to pay Robinett for work performed and materials supplied, and interfering with Robinett's business relationship with its subcontractors.

Walmart removed the action to this Court and filed the pending motion to compel arbitration. Walmart contends that Robinett's claims are subject to § 8.3.2 of the Master Contract. Robinett contends: (1) the Master Contract in the record was not validly executed and does not include the "addenda" for specific projects; and (2) alternatively, its claims are not subject to the arbitration provision, because they do not involve three or more parties or an amount in dispute more than $2,000,000.00.

B. **Applicable Legal Standards**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "applies to all arbitration agreements involving commerce, and creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Comanche Indian Tribe*

2

*of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (cleaned up).[2]  *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (explaining the FAA establishes a "liberal federal policy favoring arbitration agreements").  Under the FAA, a written agreement in any contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

If a party is "aggrieved" by the "failure, neglect, or refusal of another to arbitrate," a federal district court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4.  Upon finding the matter arbitrable, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." *Id.* § 3.

A district court employs a two-step process in determining whether to enforce an arbitration agreement.  *Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1057 (10th Cir. 2018).  First, it determines whether a valid arbitration agreement exists that provides the movant the right to compel arbitration.  *Id.*  Second, it determines the question of "arbitrability," which refers to whether the dispute falls within the scope of the agreement.  *Id.*  In addressing arbitrability at the second step, a court may have to decide the "gateway question" of whether the agreement delegates

---

[2] The phrase "involving commerce" is "broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause." *Comanche Indian Tribe*, 391 F.3d at 1132 (quotation omitted).  The "involving commerce" requirement "reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce." *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967).  The parties do not dispute that the Master Contract relates to interstate commerce or that the issue of arbitrability in this case is governed by the FAA.

the question of arbitrability to the arbitrator." *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 832 (10th Cir. 2023). If so, the question of arbitrability is decided by the arbitrator instead of by the district court. *Id.*

In applying the two-step test, a court applies ordinary state-law contract principles. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Both Robinett and Walmart rely on Oklahoma law in their briefs. *See* ECF No. 11 at 9 n. 4; ECF No. 15 at 2-3. The Court therefore applies Oklahoma law in determining whether to grant Walmart's motion.[3]

### C. Step One – Existence of Valid Arbitration Agreement

In determining whether a valid arbitration agreement exists, a motion to compel arbitration is treated akin to a motion for summary judgment. *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014). The movant "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the [nonmovant] to raise a genuine dispute of material fact regarding the existence of an agreement." *Id.* The nonmovant is given "the benefit of all reasonable doubts and inferences that may arise." *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (quotation omitted).

When "a quick look at the case" reveals "no material disputes of fact," a court can "decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014). Even when "material disputes of fact *do* exist," the FAA "calls for

---

[3] The Master Contract contains a choice-of-law provision, which provides that each renovation project "shall be construed, governed, and enforced under the laws of the State in which the Project is located." *See* ECF No. 11-2 at 43 § 9.1. Neither party addressed this issue, and the Court finds both parties acquiesced to application of Oklahoma law to the question of whether to compel arbitration of Robinett's claims. *See Brown v. Bob Moore Auto Grp., L.L.C.*, No. CIV-19-409, 2019 WL 3976848, at *5 n.4 (W.D. Okla. Aug. 22, 2019) ("Courts typically do not raise choice of law issues *sua sponte* where the parties have acquiesced to the application of a particular state's laws.") (citing *Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 831 n.4 (10th Cir. 2005)).

4

a *summary* trial – not death by discovery." *Id.* (explaining "[p]arties should not have to endure years of waiting and exhaust legions of photocopiers in discovery . . . merely to learn *where* their dispute will be heard"); *see also id.* at 977 ("The object is always to decide quickly – summarily – the proper venue for the case, whether it be the courtroom or the conference room, so the parties can get on with the merits of their dispute.").

Walmart submitted the following evidence in support of its motion. The Master Contract is entitled "Master Construction Contract Between Walmart and Contractor (CD #80119)." ECF No. 11-2. The Master Contract's signature lines are blank. However, Walmart also submitted a Contract Document Approval Receipt ("Approval Receipt") for "Contract Document #80119." ECF No. 11-3. The Approval Receipt contains the electronic signature of Sara Spencer on behalf of Walmart, which was timestamped December 1, 2022, at 10:15am. *Id.* It also contains an icon labeled "pix," and an attached picture of the electronic signature of Gayla Robinett on behalf of Robinett, which was timestamped December 12, 2022, at 1:21pm. ECF No. 11-3, 11-4. The Approval Receipt contains the following language:

> The Parties acknowledge that they will use Wal-Mart Stores, Inc. electronic signature process to sign this Agreement and agree to be bound by any such electronic signature which they have applied to the Agreement. This Agreement may be executed in any number of counterparts, each of which, when executed and delivered, shall be an original, and all the counterparts together shall constitute one and the same instrument. A counterpart signature page of this Agreement executed by a Party and the execution version of the contract transmitted electronically in Portable Document Format (PDF) shall be treated as an original, fully binding and with legal force and effect. The Parties waive any rights they may have to object to such treatment. By uploading this PDF signature, I agree that the signature will be the electronic representation of my signature for the purpose of executing any agreements with Wal-Mart Stores, Inc. or any of its affiliates in the same manner as a physical (pen and paper) signature[.]

ECF No. 11-3.

April Zehnder-Berkshire ("Zehnder-Berkshire"), Walmart's Senior Manager of Supplier Contracts, explained how the Master Contract and Approval Receipt came into existence in

5

December of 2022, and further explained the electronic system Gayla Robinett used to access the Master Contract. *See* ECF No. 16-1 (Declaration of Zehender-Berkshire). Zehender-Berkshire declared that the Master Contract was maintained through a Supplier Management Contracts Administration ("SMCA") profile in Walmart's Quickbase system, which is used by contractors throughout the country. *Id.* ¶ 3. Robinett had access to a distinct SMCA profile in Walmart's system. *Id.* ¶ 4. Robinett has previously designated Gayla Robinett as its authorized signer on its SMCA profile. *Id.* ¶ 5. On December 1, 2022, Sara Spencer approved Contract ID #80119 by uploading her electronic signature. *Id.* ¶ 8. The audit log for Contract ID # 80119 in the SMCA system shows that Gayla Robinett accessed the Master Contract at least five times on December 12, 2022. *Id.* ¶ 9; *see also* 16-1 at Ex. 1 (audit log with highlighted entries). This was the same day the Approval Receipt shows that Gayla Robinett electronically signed the Master Contract.

Taken together, the evidence satisfies Walmart's burden of showing the formation of a valid arbitration agreement under Oklahoma law. Specifically, Walmart offered and Robinett accepted the terms of the Master Contract that governed their entire construction business relationship, and such contract includes the arbitration provision. *See Heldman v. Oklahoma*, 415 F. Supp.3d 1012, 1020 (W.D. Okla. 2019) (explaining Oklahoma law recognizes ordinary contract principles of offer, acceptance, and consideration) (citing Okla. Stat. tit. 15, §§ 1-2, 51). Further, under Oklahoma law, an electronic signature is a valid method of signing a contract. *See* Okla. Stat. tit. 12A, § 15-107(d) ("If a law requires a signature, an electronic signature satisfies the law.").

Robinett raises two arguments in attempt to defeat the motion and/or create a genuine issue of fact. First, Robinett challenges Walmart's evidence linking the Master Contract and Approval Receipt. *See* ECF No. 15 at 2 (arguing that "[w]hether this document and signature go together . . . has not been conclusively established"). However, the Master Contract and Approval Receipt are linked by the contract number, and Zehnder-Berkshire explained how each document was

created and then electronically signed by both parties on the dates shown on the Approval Receipt. This is entirely consistent with the audit log associated with the relevant contract identification number. Gayla Robinett's signature appears on the Approval Receipt, which states Robinett will be bound by the electronic signature.

Notably, Robinett did not present an affidavit from Gayla Robinett denying signing the Master Contract on December 12, 2022, or any other evidence raising a genuine dispute of fact as to whether the Master Contract links to the Approval Receipt containing Gayla Robinett's signature. The only evidence Robinett presented are post-dispute letters from its counsel requesting executed copies of the Master Contract from Walmart. *See* ECF Nos. 15-1, 15-2. These letters from counsel requesting a contract, and even referencing a delay in receiving the contract, do not raise a genuine dispute as to the existence of a valid agreement, in light of the undisputed factual evidence now being presented by Walmart. The letters also urge Walmart to comply with their own obligations under the Master Contract, which undermines the argument that no valid agreement exists. *See id.*

Second, Robinett appears to argue that Walmart cannot meet its burden, because Walmart did not produce the "Addenda" that govern the projects identified in Robinett's petition. *See* ECF No. 15 at 3 (making one-sentence argument, with no citation to authority or factual evidence). *See also* ECF No. 2 at Ex. 2 at ¶ 9 (state court petition alleging Walmart has wrongfully withheld payment from Plaintiffs for work performed on certain projects, "including but not limited to" work at three specific stores and "various change orders at other locations").

This argument, which is not well-developed by Robinett, is rejected. Section 1.1 of the Master Contract directs the parties to an "Addendum for Project Specific Terms." ECF No. 11-2 at § 1.1. It also provides that, collectively, the Master Contract and Addenda and other items will be the "Contract Documents." *Id.* at § 1.1.1. However, the Master Contract, which contains the

7

arbitration provision, clearly governs the parties' entire business relationship and every relevant project for which Robinett potentially sued Walmart. The Master Contract is a global contract that "set[s] forth the general terms of the construction business relationship between" Robinett and Walmart. ECF No. 11-2 at 1 ("[T]his Contract shall serve as the master contract, and the executed Addendum shall be supplementary to this Contract."). The parties can seek enforcement of the Master Contract independent of the Addenda. *Id.* at § 8.2.1 (defining "claim" as including disputes between Walmart and Robinett "arising out of or relating to this Contract *or* the Addendum for a Project") (emphasis added). Robinett did not present any evidence indicating that any relevant Addenda would alter the arbitration provision of the Master Contract, create a question of fact, or otherwise require the need for a summary trial to determine if the provision governed the projects at issue. Robinett has not explained how the Addenda may cast doubt on the arbitration provision in the Master Contract. Even if an Addenda conflicted or was inconsistent with the Master Contract's arbitration provision, the Master Contract explicitly provides that, "in the event of conflicting provisions, the terms of this Contract shall govern over the . . . Addenda." ECF No. 11-2 at § 1.2.4.

      Robinett has also not averred that any of the construction projects at issue were *not* subject to the Master Contract for some reason. In fact, in the pre-suit demand letters, Robinett demands performance of provisions of the Master Contract. *See* ECF No. 15-1 (arguing that Walmart has "directly prevented Robinett[] from enjoying its contractual opportunity to cure" under Section 8.4.2, and "improperly withheld funds owed to Robinett[] without proper notice" under Section 9.3); ECF No. 15-2 (same). This indicates Robinett agrees the Master Contract, and all its provisions, governs its dispute with Walmart.

      Finally, Robinett's petition is not specific as to the total number of projects for which Walmart is in breach. It identifies three projects but also states the lawsuit is not limited to those

8

projects and further involves "change orders" at various locations. Based on these allegations, it would be impossible for Walmart to identify each Addenda at issue. The Court finds production of each Addenda unnecessary to establish the existence of a valid arbitration agreement governing Robinett's claims. Walmart has established as a matter of law that a valid arbitration agreement exists for every potential dispute based on the language of the Master Contract.

The Court finds that a valid arbitration agreement governs the parties' business relationship, including all construction disputes at issue, and Robinett has not created any genuine disputes of fact that require a summary trial.

### D. Step Two – Gateway Question of Arbitrability

The parties dispute whether the claims asserted here fall within the scope of the arbitration provision in the Master Contract. Walmart argues this dispute "clearly involves" three or more parties and a disputed amount over $2,000,000.00. ECF No. 11 at 11. Robinett argues Walmart is attempting to bring in "collateral matters" that are not relevant to the parties' dispute. ECF No. 15 at 5-6.

As a threshold question, the Court must determine whether it has the power to decide the issue of arbitrability or whether that power has been delegated to the arbitrator. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280-81 (10th Cir. 2017). It is presumed that parties intend courts, and not arbitrators, to determine arbitrability. *Brayman*, 83 F.4th at 832. But because arbitration is a matter of contract, parties can agree to "delegate" arbitrability to the arbitrator. *Id. See also Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1104 (10th Cir. 2020) (referring to such provisions as "delegation clauses"). To overcome this presumption, there must be "clear and unmistakable evidence" that the parties intended to delegate the issue. *Brayman*, 83 F.4th at 832. If the issue has been delegated, the Court has "no power" to decide arbitrability, "even if [it] thinks

9

that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* (cleaned up).

Clear and unmistakable evidence of intent "may be inferred from the parties' incorporation in their agreement of rules that make arbitrability subject to arbitration." *Belnap*, 844 F.3d at 1281-84, 1290 (finding incorporation of Judicial Arbitration and Mediation Services rules, by itself, demonstrated clear and unmistakable intent to arbitrate arbitrability); *see also Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1245-46 (10th Cir. 2018) (same, but with AAA National Rules for the Resolution of Employment Disputes). *Cf. Clements v. Alto Trust Co.*, 685 F. Supp. 3d 1249, 1267 (D.N.M. Aug. 4, 2023) (finding clear and unmistakable evidence of intent could not be established where arbitration agreement did not mention or specify the set of arbitration rules to be applied); *Mitchell v. Wells Fargo Bank*, 280 F. Supp. 3d 1261, 1291 (D. Utah 2017) (same); *Richan v. AGEISS, Inc.*, No. 22-cv-01060, 2022 WL 3716524, at *4 (D. Colo. Aug. 29, 2022) (same).

The Court finds that there is clear and unmistakable evidence that the parties intended to delegate the issue of arbitrability to the arbitrator. The arbitration agreement contains the following provision, "The arbitration shall be conducted on a confidential basis *in accordance with the Construction Industry Rules of the American Arbitration Association* then in effect . . . ." ECF No. 11-2 at 40 § 8.3.2.1 (emphasis added). AAA Construction Industry Rule 9(a) provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AAA, *Construction Industry Arbitration Rules and Mediation Procedures*, https://www.adr.org/sites/default/files/ConstructionRules_web.pdf (last visited Nov. 5, 2024).[4] Under Tenth Circuit precedent, this

---

[4] In contrast to the arbitrability issue, the Tenth Circuit has held that "whether an arbitration agreement *was formed* between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause or whether one of the parties specifically challenged such a clause." *Fedor*, 976 F.3d at 1005 (emphasis added).

10

alone is sufficient for the Court to find a clear and unmistakable intent to arbitrate arbitrability. *See Belnap*, 844 F.3d at 1281-84; *Dish Network*, 900 F.3d at 1245. *See also RW Dev. L.L.C. v. Cuningham Grp. Arch., P.A.*, 562 F. App'x 224, 225-26 (5th Cir. 2014) (finding clear and unmistakable evidence of intent where agreement incorporated AAA Construction Industry Rules). The Court therefore has no power to resolve the dispute regarding whether the claims fall within the scope of the arbitration agreement.

Robinett argues the Tenth Circuit does not recognize the incorporation of arbitration rules as clear and unmistakable evidence that parties agreed to delegate arbitrability. *See* ECF No. 15 at 4 (citing *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 777 & n.1, 780 (10th Cir. 1998)). However, this argument is contrary to the Tenth Circuit's more recent holding in *Belnap*. In that decision, the court discussed *Riley* but found its holding unpersuasive. The court reasoned that the particular version of AAA rules incorporated in *Riley* did not have a rule relating to arbitrability. *See Belnap*, 844 F.3d at 1284. Here, as in *Belnap*, the rules incorporated into the Master Contract delegate the issue of arbitration to the arbitrator, thereby removing this issue from the district court. Robinett's citation to *Riley* is therefore unpersuasive.[5]

## II.  American's Motion to Intervene

American seeks to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2), because it claims an interest relating to the property or transaction that is the subject of the action. According to the motion, Robinett opened a line of credit with American in order to pay outstanding invoices to its subcontractors for work completed under a contract between

---

[5] One court in this district found clear and unmistakable evidence of intent to arbitrate arbitrability where the agreement did not identify a specific set of AAA rules, and only generally referenced that all claims "shall be resolved by binding arbitration administered by the [AAA]." *See Papanek v. Dish Network, L.L.C.*, No. 23-184-JWB, 2024 WL 1828176, at *4 (N.D. Okla. Apr. 26, 2024). The Court need not reach this question here because the agreement references a specific set of rules, which contain a delegation clause.

11

Robinett and Walmart, and Robinett is now in default on a $1.6 million promissory note held by American. Robinett does not oppose the motion. Walmart requests that the motion be held in abeyance pending arbitration, in the event the Court grants its motion to compel arbitration.

The Court finds it most prudent to delay resolution of the motion to intervene until the arbitration proceedings are resolved. Rather than hold the motion in abeyance, the Court elects to deny the motion without prejudice to refiling upon completion of arbitration and reopening this case.

### III. Conclusion

Defendant's Motion to Compel Arbitration and Brief in Support (ECF No. 11) is **GRANTED**. American's Motion for Leave to Intervene (ECF No. 17) is **DENIED**, without prejudice to refiling upon reopening this case.

The parties are ordered to file a joint status report with the Court within fourteen (14) days of the completion of the arbitration proceedings.

Pursuant to LCvR 41-1, the Court Clerk is directed to administratively close the case pending either an Order of the Court reopening the proceedings, or dismissal of the action with prejudice by stipulation of the parties.

Counsel for Robinett is ordered to inform counsel for American when and if the case is reopened.

**SO ORDERED** this 8th day of November, 2024.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**